**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Carla Florentine HINES, Leroy Dale Hines, Robert E. Woolverton, Anna Mae Hines, and Anthony A. Cassel, Defendants-Appellants.**

**Nos. 80–1425, and 80–1433 to 80–1436.**

United States Court of Appeals,
Tenth Circuit.

Nov. 2, 1982.

Rehearing Denied Jan. 25, 1983.

Carl D. Hughes, Oklahoma City, Okl., Philip F. Cardarella, Kansas City, Mo., and Raymond J. Smith, Chicago, Ill. (James P. Quinn, Kansas City, Mo., Thomas G. Hanlon; and Larry A. Gullekson, Tulsa, Okl., with them on the consolidated brief), for defendants-appellants.

David B.B. Helfrey, Atty., Dept. of Justice, Washington, D.C. (Hubert H. Bryant, U.S. Atty., N.D. Oklahoma, Tulsa, Okl., and Robert E. Mydans, Atty., Dept. of Justice, Washington, D.C., on the brief), for plaintiff-appellee.

Before SETH, Chief Judge, and DOYLE and McKAY, Circuit Judges.

McKAY, Circuit Judge.

The defendants appeal from criminal convictions obtained under the federal conspiracy and racketeering laws.

The indictment alleged that the appellants had conspired to use interstate travel and facilities in order to further an Oklahoma bookmaking operation which was illegal under Oklahoma's commercial gambling laws. *See* Okla.Stat.Ann. tit. 21 §§ 981–

988 (West Supp.1981). The indictment charged that the conspiracy violated the provisions of title 18, section 371 of the United States Code, which imposes criminal sanctions where "two or more persons conspire ... to commit any offense against the United States, ... and one or more of such persons do any act to effect the object of the conspiracy ...." 18 U.S.C. § 371 (1976). The indictment identified the "offense against the United States" as a violation of section 1952 of the Travel Act, 18 U.S.C. § 1952 (1976). Section 1952 proscribes the use of interstate travel and facilities where the intent is to further "any unlawful activity," 18 U.S.C. § 1952(a), and defines "unlawful activity" to include "any business enterprise involving gambling ... offenses in violation of the laws of the State in which they are committed ...." 18 U.S.C. § 1952(b). The case was tried in federal district court where a jury found the appellants guilty as charged in the indictment. These appeals followed.

We abated the appeals pending a decision of the Oklahoma Court of Criminal Appeals as to the constitutionality of section 982 of Oklahoma's commercial gambling statute.[1] In *State v. Koo,* 647 P.2d 889 (Okl.Cr.App. 1982), that court determined that the section was not unconstitutionally vague or overbroad and, accordingly, did not violate standards of due process.[2] Therefore, these appeals are ordered removed from the list of abated cases and submitted for decision.

On appeal, appellants raise eleven[3] challenges to their convictions: (1) section 1952 is an unconstitutional delegation of legislative authority to the states; (2) section 982 of the Oklahoma Commercial Gambling Statute violates federal standards of due process; (3) the trial judge erred in not recusing himself for prejudice or bias; (4) the evidence at trial was insufficient to sustain appellants' convictions; (5) the trial court erred in excluding the testimony of appellants' expert witness, Bobby Baldwin; (6) the trial court erred in refusing to grant a mistrial after an FBI agent conferred with jurors from the witness stand during a recess; (7) the trial court erred in admitting the testimony of Rod Baker, a former probation officer of one of the appellants; (8) the trial court erred in denying a motion for severance; (9) the trial court erred in refusing to suppress certain wiretap evidence; (10) the trial court improperly instructed the jury on the elements of a conspiracy offense; and, (11) the trial court erred in allowing the jury to examine a certain exhibit during deliberations.

1. *Delegation of Legislative Authority*

Appellants charge that Congress, in relying upon state law to supply an element of a section 1952 offense, has impermissibly delegated its legislative power to the states. We do not agree. Congress defined as a federal crime the use of interstate travel and facilities for the purpose of violating or attempting to violate state law. It is not the violation of state law which constitutes an offense under section 1952, but rather the use of interstate means for that purpose. Congress has acted to protect instruments of interstate commerce from abuse and has defined the proscribed abuse in terms of state law. "[T]he underlying state law merely serves a definitional purpose in characterizing the proscribed conduct." *United States v. Loucas,* 629 F.2d 989, 991 (4th Cir.1980), *cert. denied,* 450 U.S. 1030, 101 S.Ct. 1738, 68 L.Ed.2d 224 (1981). This is not an impermissible delegation of legislative power by Congress to the states. *United States v. Palmer,* 465 F.2d 697, 699 (6th Cir.), *cert. denied,* 409 U.S. 874, 93 S.Ct. 119, 34 L.Ed.2d 126 (1972).[4]

---

1. The Oklahoma Court of Criminal Appeals is the highest Oklahoma appellate court which can decide the constitutionality of the statute. *See* Okla. Const. art. 7, § 4.

2. The state court did not distinguish between state and federal constitutional standards.

3. Appellants enumerated twelve challenges, but since two of these related to the sufficiency of the evidence, we will consider them together.

4. Furthermore, the fact that § 1952 operates differently in states in which gambling is lawful

## 2. Constitutionality of Section 982 of the Oklahoma Commercial Gambling Statute

The indictment charged that appellants conspired to use interstate means to violate sections 982, 987 and 988 of Oklahoma's commercial gambling statute. On appeal, appellants argue that section 982 of the statute [5] violates constitutional standards of due process because it is facially overbroad and vague. Since it is impossible to determine from the verdict to what extent appellants' convictions were based upon conspiracy to use interstate means to violate section 982, as opposed to other sections, the constitutionality of section 982 is critical to assessing the validity of those convictions. If section 982 is unconstitutional the convictions cannot be sustained. *See Stromberg v. California,* 283 U.S. 359, 367–68, 51 S.Ct. 532, 535, 75 L.Ed. 1117 (1931).

■ In support of the vagueness and overbreadth arguments, the appellants offer numerous hypothetical applications of the statute, the purpose of which is to show that the law is ambiguous on its face or has conceivable applications not intended by the Oklahoma legislature. We agree with the Oklahoma Court of Criminal Appeals that the statute is neither overbroad nor vague.

Appellants' overbreadth challenge must fail because the statute does not reach "a substantial amount of constitutionally protected conduct." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). We have evaluated "the ambiguous as well as the unambiguous scope" of section 982 and have concluded that its language does not cause citizens to forego lawful enterprises in order to avoid the reach of the statute. 102 S.Ct. at 1191 n. 6. Moreover, First Amendment rights are not implicated in any significant way. Therefore, this is not a case in which appellants have standing to challenge a statute because of its adverse effect upon the First Amendment rights of others not presently before the court. *See Broadrick v. Oklahoma,* 413 U.S. 601, 611–13, 93 S.Ct. 2908, 2915–2916, 37 L.Ed.2d 830 (1973).

In advancing their vagueness argument, appellants claim that the statute is so vague that a person of reasonable intelligence cannot possibly understand its scope. They cite three allegedly fatal flaws.

■ They first fault the statute on the basis that, by its literal terms, it proscribes the conduct of those who operate or otherwise have a financial stake in a commercial gambling enterprise, but it does not proscribe the conduct of a "better" who does business with a commercial gambling enterprise. However, this characteristic does not implicate the constitutional concept of vagueness. It is the province of the Oklahoma legislature to decide what conduct will be prohibited by its criminal statutes. A statute is not vague merely because the legislature does not criminalize certain types of conduct. In any event, appellants do not have standing to make this argu-

---

from those in which it is not does not violate constitutional principles. *See United States v. Villano,* 529 F.2d 1046, 1056 (10th Cir.), *cert. denied,* 426 U.S. 953, 96 S.Ct. 3180, 49 L.Ed.2d 1193 (1976); *Spinelli v. United States,* 382 F.2d 871, 890 (8th Cir.1967), *rev'd on other grounds,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

**5.** Section 982 provides:

§ 982. Commercial gambling
  A.  Commercial gambling is:
  1.  Operating or receiving all or part of the earnings of a gambling place;
  2.  Receiving, recording or forwarding bets or offers to bet or, with intent to receive, record or forward bets or offers to bet, possessing facilities to do so;

  3.  For gain, becoming a custodian of anything of value bet or offered to be bet;
  4.  Conducting a lottery or with intent to conduct a lottery possessing facilities to do so;
  5.  Setting up for use or collecting the proceeds of any gambling device; or
  6.  Alone or with others, owning, controlling, managing or financing a gambling business.
  B.  Any person found guilty of commercial gambling shall be punished by imprisonment for not more than ten (10) years or a fine of not more than Twenty-five Thousand Dollars ($25,000.00), or by both such fine and imprisonment.
Okla.Stat.Ann. tit. 21 § 982 (West Supp.1981).

ment. Vagueness challenges to statutes which do not involve First Amendment rights are limited to the facts of the case at hand. *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975). "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974).

Appellants next assert that the statute is vague because many of the words and phrases used in the statute are susceptible of various interpretations. An examination of the words and phrases in section 982 cited by appellants as ambiguous reveals that each either is defined within the commercial gambling statute or has a common and ordinary meaning which clearly defines its scope. The statute "is set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest." *CSC v. Letter Carriers,* 413 U.S. 548, 579, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973). In any event, the statute is not vague as it pertains to appellants' conduct. There is no suggestion that the statute failed to inform appellants that their conduct was proscribed, and appellants lack standing to attack the statute on the basis that it might be unconstitutionally vague as applied to the conduct of others. *Village of Hoffman Estates,* 102 S.Ct. at 1191; *Parker,* 417 U.S. at 756, 94 S.Ct. at 2561–2562.

Finally, appellants attack section 982 on the ground that it does not expressly require criminal intent in each of its sub-elements. For instance, section 982 A.1 defines commercial gambling as "[o]perating or receiving all or part of the earnings of a gambling place," and section 982 A.3 defines commercial gambling as "[f]or gain,

becoming a custodian of anything of value bet or offered to be bet." Appellants posit hypotheticals in which non-criminal conduct would appear to come within the proscriptions of the statute. However, the criminal intent of the appellants is clear on the record, and the trial judge gave an adequate intent instruction to the jury. Therefore, the absence in portions of section 982 of an express requirement of criminal intent is irrelevant in appellants' case, and, as stated above, appellants may not argue the invalidity of the statute on the basis of hypothetical conduct of third parties not before the court. Moreover, we think a criminal intent requirement is a reasonable inference from any rational reading of the statute. Indeed, the Oklahoma Court of Criminal Appeals has held, subsequent to appellants' trial, "that the nature of the offense is such that [section 982] contains within its terms an averment of knowledge." *State v. Koo,* 647 P.2d 889, 891 (Okl.Cr.App.1982).

We hold that section 982 adequately advised appellants that the conduct in which they subsequently engaged was unlawful, and, accordingly, the statute did not violate their due process rights.

### 3. *Disqualification of the Trial Judge*

On January 31, 1980, prior to trial, appellant Leroy Dale Hines filed a motion and affidavit, pursuant to 28 U.S.C. §§ 455(a) and 455(b)(1),[6] requesting the trial judge to disqualify himself for reasons of personal bias and prejudice against Mr. Hines.

The basis for the motion was a claim, set forth in Mr. Hines' affidavit, that the judge, sometime in late November or early December, 1979, while dining with friends at an unnamed dinner club in Tulsa, Okla-

---

6. Section 455, in pertinent part, provides:

§ 455. Disqualification of justice, judge, or magistrate

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

. . . .

28 U.S.C. § 455 (1976 & Supp. II 1978).

homa, stated to an unnamed person that he was "going to see to it that [Mr. Hines] gets put away." Record, vol. 1, at 134. Mr. Hines' affidavit was not based on personal knowledge, but rather upon that of an unnamed third person who reported to Mr. Hines that he had heard the statement. Mr. Hines avers that he received this report sometime before January 10, 1980.

Section 455 was amended in 1974 for the purpose of enhancing public confidence in the impartiality of the federal judicial system. S.Rep. No. 419, 93d Cong., 1st Sess. 5 (1973). Prior to 1974, section 455 did not reach questions of bias or prejudice, but merely provided for disqualification because of specified relationships to a case or because of a substantial interest in the case.[7] See 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3541 (1975). Prior to the 1974 amendment, questions of judicial bias or prejudice were raised under 28 U.S.C. § 144.[8]

By the terms of section 144, a district court judge must recuse himself in any proceeding upon the filing of a timely and sufficient affidavit of personal bias or prejudice, even if he has no actual personal bias or prejudice. However, in practice, the procedural requirements of this statute, which are quite specific, have been strictly construed. United States v. Womack, 454 F.2d 1337 (5th Cir.1972), cert. denied, 414 U.S. 1025, 94 S.Ct. 450, 38 L.Ed.2d 316 (1973). As a result, actual disqualifications under section 144 have been rare.[9] See 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3541 (1975).

■ The effective scope of section 455 is much broader. There are no express procedural hurdles and, while subsection (b)(1) requires recusal if the judge has actual personal bias or prejudice or extrajudicial knowledge of disputed evidentiary facts, subsection (a) requires recusal merely if the circumstances are such that the judge's "impartiality might be reasonably questioned." See United States v. Ritter, 540 F.2d 459, 462 (10th Cir.) cert. denied, 429 U.S. 951, 97 S.Ct. 370, 50 L.Ed.2d 319 (1976). Under section 455(a), the judge is under a continuing duty to ask himself what a reasonable person knowing all the relevant facts would think about his impartiality. Roberts v. Bailar, 625 F.2d 125, 129 (6th Cir.1980). "If there is a reasonable factual basis for doubting the judge's impartiality, ... [he] should disqualify himself ...." 625 F.2d at 129, citing H.R.Rep. No. 1453, 93d Cong., 2d Sess. (1974), U.S.Code Cong. & Admin.News, p. 6351.[10]

---

7. Prior to the 1974 revision, § 455 read:
   Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein.
   P.L. No. 80–773, § 1, 62 Stat. 869, 908 (1948) (amended 1974).

8. The statute continues in force and provides:
   Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
   The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.
   28 U.S.C. § 144 (1976).
   Since terms of court were abolished in 1963, 28 U.S.C. § 138 (1976), the timeliness of the affidavit must now be judged by a standard of reasonableness in light of the given facts. See e.g., United States v. Patrick, 542 F.2d 381, 390 (7th Cir.1976), cert. denied, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977).

9. For example, in Roberts v. Bailar, 625 F.2d 125 (6th Cir.1980), the court found no error in the trial judge's denial of a motion under § 144 because the party's counsel, rather than the party, as required by statute, signed the affidavit. Id. at 128.

10. See also United States v. Heldt, 668 F.2d 1238, 1271 (D.C.Cir.1981), cert. denied, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982), and the cases cited in footnote 67 therein.

■ The trial court based its denial of Mr. Hines' section 455 motion upon its findings that the motion was untimely and not accompanied by a proper certificate of counsel. The trial court also held that, in any event, the judge did not have actual personal bias or prejudice and, under the circumstances, a reasonable man would not question the impartiality of the judge. Because we do not accept the proposition that section 144 procedural requirements are impliedly applicable to a section 455 motion, we hold that it was error for the trial judge to deny the motion as procedurally defective for want of a proper certificate. As stated by the court in *Roberts v. Bailar*, 625 F.2d 125 (6th Cir.1980):

> Neither the text nor the legislative history of § 455(a) contain any suggestion that the procedures of § 144 are applicable to disqualification under § 455(a) . . . . In fact, Congress disregarded suggestions that requirements such as timeliness apply to disqualification under § 455 . . . . Section 455(a), moreover, is a product of the self-enforcing Code of Judicial Conduct . . . .

625 F.2d at 128 n. 8 (citations omitted). We note that there is disagreement in the circuits as to whether timeliness is a factor under section 455(a).[11] *Compare In re International Business Machines Corp.*, 618 F.2d 923, 932 (2d Cir.1980) (timeliness required) *with SCA Services, Inc. v. Morgan*, 557 F.2d 110, 117 (7th Cir.1977) (timeliness not required). We are not prepared to say that timeliness should always be disregarded with respect to section 455 recusals. *See United States v. Conforte*, 624 F.2d 869, 879–80 (9th Cir.), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980), (whether timeliness is required is a matter of the peculiar circumstances involved). For instance, a proper case for considering the untimeliness of a section 455(a) motion might exist when a party suggests to the court grounds for recusal which would cause a reasonable man to doubt the court's impartiality, but makes the suggestion some time after the trial has ended.

■ In the present case, we find it unnecessary to reach the timeliness question. Even if we assume that the motion were timely, the judge denied that he had actual bias or prejudice and we find in the record no adequate proof of such. Therefore, recusal is not required under section 455(b)(1). Furthermore, we agree with the trial judge's finding that the contents of Mr. Hines' affidavit would not cause a reasonable man to doubt the judge's impartiality. Thus, recusal is not required under section 455(a).

Mr. Hines' affidavit fails to state with reasonable particularity when, where, and to whom the statement was made, nor has he identified the informant who heard the statement and reported it to Mr. Hines. His counsel also concedes that, notwithstanding the attorney-client privilege, Mr. Hines has not identified to him the source of the statement. Record, vol. 1, at 139. Mr. Hines states in summary fashion that the informant was known to him to be reliable and to have been in a position to hear the judge's statement, but he offers no underlying facts to support either his opinion of the informant's reliability or his belief that the informant was in a position to hear the statement. Justice would be impeded by a policy mandating recusal on such scant submissions. Although we acknowledge that the intent in amending section 455 was to negate even the appearance of partiality in judicial proceedings, section 455(a) must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice. The appellants have not shown actual bias and we do not think a reasonable man would doubt the judge's impartiality under the circumstances presented. We hold that the trial judge did not err in refusing to disqualify himself.

11. The decision of this court in *United States v. Bennett*, 539 F.2d 45 (10th Cir.), *cert. denied*, 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976), although addressing recusal under both § 144 and § 455(a), considered timeliness only with respect to § 144 and did not discuss its applicability to § 455(a).

### 4. Sufficiency of the Evidence

In assessing whether the evidence is sufficient to support a verdict of guilty, a court of appeals does not consider the credibility of witnesses or weigh conflicting evidence. *United States v. Downen,* 496 F.2d 314, 319 (10th Cir.), *cert. denied,* 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 142 (1974). These duties are the province of the jury. *United States v. Spoonhunter,* 476 F.2d 1050, 1056 (10th Cir.1973). This court will disturb the jury's factual findings only if they lack a basis of support in the evidence. *See United States v. 79.95 Acres of Land,* 459 F.2d 185 (10th Cir.1972).

The record in this case contains evidence that each of the appellants played a specific criminal role in a conspiracy to use interstate means to violate Oklahoma's commercial gambling statute. The record also contains evidence from which it might be inferred that one or more of the appellants was merely a "bettor," rather than a conspirator. The resolution of this conflict was a matter for the jury, and the evidence is sufficient to support the jury's finding that each appellant was a criminal conspirator.

### 5. Testimony of Bobby Baldwin

Appellants offered Bobby Baldwin, a poker player with a national reputation, as an expert witness in the field of sports bookmaking. The trial court rejected this offer because in its view Mr. Baldwin was not qualified by knowledge, skill, experience, training, or education in the bookmaking field. Although Mr. Baldwin was experienced as a gambler in gambling's many forms, enjoyed a national reputation for his success at poker, had written books on gambling, had lectured on gambling, and was familiar with the terminology employed in bookmaking, he was not and had never been a bookmaker, had not studied bookmaking, and had no experience in analyzing bookmaking operations. The trial court gave the appellants additional time to locate an expert on bookmaking. They subsequently qualified Joey Boston, who had been a bookmaker for years, gaining his expertise from actual experience. The testimony of Mr. Boston was substantially the same as the offer of proof made in behalf of Mr. Baldwin.

The trial court has considerable discretion in assessing the qualifications of a witness to testify as an expert, and we will disturb its judgment only when it is clear that the trial court has abused its discretion. *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.,* 516 F.2d 33, 37 (10th Cir.1975). Under the situation presented, we believe that the trial court did not abuse its discretion. Moreover, we have held that an error in the exclusion of evidence can be cured by the admission of other evidence of substantially the same nature. *Warden v. United States,* 391 F.2d 747, 750 (10th Cir.1968). Since Mr. Boston testified substantially as Mr. Baldwin would have testified, no harm resulted from excluding Mr. Baldwin's testimony.

### 6. Witness-Juror Contact

During the trial, the judge and counsel retired to the judge's chambers to consult privately, leaving a witness in the witness box. In their absence, the witness, an FBI agent, spoke from the witness box to two jurors. When the judge and counsel returned to the courtroom, a defense attorney advised the judge of this contact. The judge granted appellants a hearing on the nature of the contact. With the jury absent, appellants' counsel questioned the witness, who testified that the conversation concerned qualifications for becoming an FBI Agent, that the witness did not initiate the conversation, that the conversation did not involve the merits of the case or the evidence, and that the conversation lasted approximately two minutes. The judge did not ask any questions of the witness and appellants' counsel did not request to examine the two jurors. Following this examination of the witness, appellants' counsel moved for mistrial. The trial court judge overruled this motion without comment.

The Supreme Court has held that "private communications, possibly prejudicial,

between jurors and ... witnesses ... are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear." *Mattox v. United States,* 146 U.S. 140, 150, 13 S.Ct. 50, 53, 36 L.Ed. 917 (1892). *See also Little v. United States,* 73 F.2d 861, 865 (10th Cir.1934). In a later opinion, the Court stated that a private communication between a witness and juror is presumptively prejudicial in a criminal case. *Remmer v. United States,* 350 U.S. 377, 379, 76 S.Ct. 425, 426, 100 L.Ed. 435 (1956).

■ We have examined carefully the record on this matter and have concluded that it rebuts any presumption of prejudice. *See Bacino v. United States,* 316 F.2d 11, 14 (10th Cir.), *cert. denied,* 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 62 (1963). A careful consideration of appellants' arguments to the contrary does not dissuade us from this view. The communication was improper, and it is unfortunate that it occurred. However, appellants were not prejudiced by it, and the court acted properly in denying their motion for a mistrial when, after a proper hearing, the harmlessness of the communication was made to appear.

### 7. *Testimony of Rod Baker*

During the trial, the prosecution sought to admit the testimony of Rod Baker, the probation officer of appellant Leroy Dale Hines. Appellants' counsel objected and the trial judge overruled this objection.[12] However, the judge instructed the prosecution to avoid revealing to the jury that Mr. Baker served as Mr. Hines' probation officer. Under direct examination, Mr. Baker testified that Mr. Hines had told him "that he [Hines] had been a gambler all his life and intended to pursue that career only on a low key and not with the public." Rec-

ord, vol. 9, at 464.[13] Counsel for Mr. Hines declined to cross-examine Mr. Baker, and the trial judge instructed the jury to consider Mr. Baker's testimony only with respect to Mr. Hines.

On appeal the appellants claim that the trial court denied Mr. Hines his Sixth Amendment right to confront witnesses against him. The appellants state that Hines declined to cross-examine Mr. Baker only because he feared that cross-examination would reveal that Mr. Baker was his probation officer and that this revelation would alert the jury to his previous criminal conviction. The appellants argue that by allowing Baker to testify despite Hines' hesitancy to cross-examine, the trial court denied Hines his right of confrontation.

■ The Sixth Amendment right of confrontation does indeed include the right of the accused to cross-examine a witness against him. *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). However, this right is not denied simply because the prosecution is permitted to examine a witness which the defense declines for tactical reasons to cross-examine. The trial court gave the appellants the opportunity to cross-examine Mr. Baker without restriction. While it may have taken considerable skill for Mr. Hines or any of his co-defendants effectively to have cross-examined Mr. Baker without revealing Mr. Baker's status as Mr. Hines' probation officer, the fact that the danger existed did not legally deny them the right of cross-examination. Appellants voluntarily waived their right to cross-examination; they were not denied their Sixth Amendment right to confront Mr. Baker.

### 8. *Severance*

During the trial some of the appellants sought severance of their prosecution from

---

12. Counsel objected to Mr. Baker's testimony on the grounds that it was irrelevant and immaterial, antedated the alleged conspiracy, was protected by privilege or, in the alternative, was elicited without *Miranda* warnings, improperly implicated co-defendants and constituted hearsay. Record, vol. 9, at 375–77. None of these grounds are raised on appeal.

13. Mr. Hines made this statement during a routine probation interview, under circumstances which did not amount to custodial interrogation, and at a time prior to Mr. Hines' conspiracy indictment. We note that Mr. Hines' statement was an admission which is not hearsay under the federal rules, Fed.R.Evid. 801(d)(2), and was not made under circumstances requiring invocation of the· *Miranda* rule.

that of Mr. Hines. Appellants argue on appeal that the refusal of the trial court judge to grant severance constitutes reversible error. They argue that severance of the remaining defendants from Mr. Hines was necessary because Mr. Hines was a target of the prosecution, and the other defendants were branded with guilt by association.

Rule 8(b) of the Federal Rules of Criminal Procedure provides in pertinent part that "[t]wo or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed.R. Crim.P. 8(b).

Rule 14 provides relief from prejudicial joinder. "If it appears that a defendant or the Government is prejudiced by a joinder . . . of defendants in an indictment or information or for such joinder for trial together, the court may . . . grant a severance of defendants or provide whatever other relief justice requires." Fed.R. Crim.P. 14.

In essence, rule 8(b) allows the prosecution to join defendants, while rule 14 permits the trial court to sever the joinder to avoid prejudice to a party. This court recently restated the principles governing our review of a trial court's decision to grant or deny severance:

The decision to grant a severance is within the sound discretion of the trial court and its decision will not ordinarily be reversed in the absence of a strong showing of prejudice. *United States v. Heath,* 580 F.2d 1011 (10th Cir.1978), *cert. denied,* 439 U.S. 1075, 99 S.Ct. 850, 59 L.Ed.2d 42 (1979). A trial court may grant a severance if it appears that the defendant or Government is prejudiced by joinder. *United States v. Herring,* 582 F.2d 535 (10th Cir.1978). In order to obtain a severance, a defendant must show clear prejudice resulting from joinder at trial. *United States v. Bridwell,* 583 F.2d 1135 (10th Cir.1978). The fact that severance would improve chances for

acquittal is not sufficient. *United States v. Heath, supra; United States v. Campanale,* 518 F.2d 352 (9th Cir.1975), *cert. denied,* 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976).

*United States v. Strand,* 617 F.2d 571, 575 (10th Cir.), *cert. denied,* 449 U.S. 841, 101 S.Ct. 120, 66 L.Ed.2d 48 (1980).

■ Applying these standards, we conclude that the trial court did not abuse its discretion. The appellants have made no showing of clear prejudice from the failure to sever the joined parties. In our view, there is no prejudice if the evidence is such that the jury could compartmentalize it against each defendant. *See United States v. Anthony,* 565 F.2d 533, 538–39 (8th Cir. 1977), *cert. denied,* 434 U.S. 1079, 98 S.Ct. 1274, 55 L.Ed.2d 787 (1978). The instructions given in this case clearly advised the jury as to which defendant each item of evidence was admissible, and the potential for confusion was minimal. Although care should be taken to assure that conspiracy allegations are not used to overcome weak or insufficient evidence by the device of taint, judicial efficiency generally favors trying co-conspirators together. "It is axiomatic that individuals who are charged with engaging in a conspiracy should be tried together, especially where proof of the defendants' complicity in the conspiracy is based on the same evidence and acts." *United States v. Graham,* 548 F.2d 1302, 1310 (8th Cir.1977) (citing *United States v. Hutchinson,* 488 F.2d 484, 492 (8th Cir.1973), *cert. denied,* 417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed.2d 219 (1974)). While there may be merit in the contention that severance would have improved some appellants' chances for acquittal, that contention, standing alone, does not mandate separate trials.

### 9. *Wiretap Evidence*

Appellants argue that the government lacked probable cause for the issuance of a search warrant and several wire interception orders which incriminated the appellants and, accordingly, that the trial court erred in denying their motion to suppress evidence produced pursuant to the warrant and orders.

■ We have reviewed the record and have concluded that the federal district courts issuing the warrant and orders applied the proper standards in determining that probable cause for their issuance existed. *See* Record, vol. 1, at 126–29, and cases cited therein; 18 U.S.C. § 2518(3) (1976); Fed.R.Crim.P. 41. Accordingly, we hold that the trial court did not err in denying appellants' motion for suppression.

10. *Jury Instruction on the Elements of Conspiracy*

Appellants argue that the trial court's instruction to the jury on the elements of a section 371 conspiracy violation were confusing, defective, and prejudicial.

■ We have reviewed the record and find the instructions legally sufficient. *See* Record, vol. 13, at 1261–71; vol. 1, at 213–18. The trial judge instructed the jury concerning the pertinent provisions of section 371 and the four elements required to be proven beyond a reasonable doubt: (1) that the conspiracy was willfully formed and existed as set forth in the indictment; (2) that the accused knowingly and willfully joined the conspiracy; (3) that at least one co-conspirator thereafter knowingly committed one of the overt acts, as set forth in the indictment; and, (4) that such overt act was committed to further an object or purpose of the conspiracy, as charged. Record, vol. 13, at 1261–62. The trial court properly defined conspiracy and fully instructed the jury concerning the required proof of a criminal conspiracy. *Id.* at 1262–63. The court also instructed the jury that "mere similarity of conduct among various persons and the fact that they may have associated with each other and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy." *Id.* at 1263. The court explained the concepts of knowing and willful participation, specific intent, and overt act. *Id.* at 1264–66. The court also read to the jury pertinent parts of section 1952 and the Oklahoma commercial gambling statute. We do note that the specific conspiracy instruction requested by appellants was not given to the jury. However, the trial court is not re-

quired to give any specifically requested instruction, provided that, viewing all of the instructions as a whole, the jury is instructed adequately. *United States v. Westbo,* 576 F.2d 285, 289 (10th Cir.1978). The trial judge "must fairly and impartially state the issues and applicable law in logical sequence and in the common speech of man . . . ." *Elbel v. United States,* 364 F.2d 127, 134 (10th Cir.1966), *cert. denied,* 385 U.S. 1014, 87 S.Ct. 727, 17 L.Ed.2d 550 (1967). It is clear to this court that the jury was adequately instructed on the elements of a section 371 conspiracy. The trial court's instruction to the jury was complete, clear, and not unfairly prejudicial to appellants.

11. *Jury Exhibit*

During the trial, the parties and their counsel stipulated in writing to the authenticity of tape recorded conversations which government investigators had intercepted and which the prosecution would have offered in evidence. The stipulation document was entered into evidence, and the parties agreed that the stipulation, except for four paragraphs, would be read to the jury, but that the document would not be presented to the jury. Record, vol. 9, at 379. When the jury retired for deliberation, the trial judge stated that all exhibits, except the tape recordings, would be sent to the jury room. Record, vol. 13, at 1280. Appellants did not object. When the jury requested the replaying of certain tape recordings, the court and counsel discussed the fact that the jury had the written stipulation in the jury room. *Id.* at 1290. Appellants did not object or comment further at that time. However, the following day appellants moved for a mistrial. There ensued considerable discussion on the matter between counsel and the court. The trial court judge did not recall the parties' agreement to withhold the stipulation document from the jury. *Id.* at 1306, 1309. The judge noted that no one objected when he announced that all exhibits, except the tapes, would be sent to the jury room. *Id.* at 1309–10. After careful review, the judge concluded that, in any event, there was nothing prejudicial in any part of the stipulation. *Id.* at 1312.

Absent clear prejudice to appellants, it is within the discretion of the trial judge to decide what exhibits are permitted in the jury room. *United States v. Downen,* 496 F.2d 314, 320 (10th Cir.1974). The appellants have claimed prejudice, but they have failed to convince us of its existence. This court will not overturn the trial court's exercise of discretion "absent a clear showing of abuse and resulting prejudice." 496 F.2d at 321. Perhaps the trial judge would not have permitted the stipulation to be sent to the jury room had he remembered the agreement of the parties or had they called it to his attention. Nevertheless, he did not commit reversible error in sending the stipulation to the jury room because appellants were not prejudiced by this action.

*Conclusion*

We have considered each of appellants' grounds for reversal of their convictions. We find that neither individually nor collectively do they establish grounds for reversal. The convictions are AFFIRMED.