Dorothy WILLNER, Plaintiff–Appellant,

v.

UNIVERSITY OF KANSAS, Defendant–Appellee.

No. 86–2678.

United States Court of Appeals, Tenth Circuit.

June 1, 1988.

---

Dorothy Willner, pro se.

Rose Marino, Associate Gen. Counsel, University of Kansas, Lawrence, Kan., J. Steven Pigg, Fisher, Patterson, Sayler & Smith, Topeka, Kan., Clifford T. Mueller and Douglas M. Greenwald, McAnany, Van Cleave & Phillips, Lenexa, Kan., for defendant-appellee.

Before WRIGHT, ALARCON and HALL, Circuit Judges.[*]

PER CURIAM.

Dorothy Willner appeals from the judgment for the defendants after a bench trial in this sex discrimination action. She makes the following contentions on appeal.

(1) The district judge erred in refusing to recuse himself from presiding over the case.

(2) The district court erred when it dismissed her claims against the individual defendants prior to trial because of her failure to comply with an order compelling her to answer interrogatories.

(3) The district court's factual findings were clearly erroneous.

I

PERTINENT FACTS

Dorothy Willner, a professor of anthropology at the University of Kansas, filed this action naming as defendants the University of Kansas and twelve individuals who either were or had been University Chancellor, Dean of the College of Liberal Arts and Sciences, anthropology department chairpersons, or professors in the anthropology department (collectively individual defendants). She alleged the defendants had denied her equal pay, verbally abused her, harassed her, caused her to lose a Fulbright research grant, falsely evaluated her with regard to salary increases, deliberately failed to display a

---

[*] Honorable Eugene A. Wright, Honorable Arthur L. Alarcon, and Honorable Cynthia Holcomb Hall, Circuit Judges, United States Court of Appeals for the Ninth Circuit, sitting by designation.

book that she had written, and slandered her to students, faculty, and others. She claimed the defendants discriminated against her because she is female and Jewish. She sought relief pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1986, 1988; Title VII, 42 U.S.C. § 2000e et seq.; the Equal Pay Act (EPA), 29 U.S.C. § 206(d); Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq.; and the first, fifth, and fourteenth amendments.

Willner's attorney was granted leave to withdraw shortly after the complaint was filed. Willner appeared pro se throughout the course of the lawsuit. During pretrial proceedings, all of Dorothy Willner's claims were dismissed, except for the Title VII and the EPA claims against the University of Kansas. In May 1986, a bench trial was held on the remaining claims. The district court entered judgment for the University of Kansas. Willner appeals from the judgment.

## II

### PROPRIETY OF RECUSAL ISSUES

Dorothy Willner moved for the recusal of Judge Richard D. Rogers on several grounds at various stages of the proceedings. She claims that recusal was warranted on the following grounds:

1. Judge Rogers' demeanor in a separate sex discrimination action filed against the University of Kansas by her sister suggested bias against all similarly situated females.

2. Judge Rogers had made statements evincing a bias against women employees who filed actions against the University of Kansas.

3. Judge Rogers failed to disclose that he was related to a former defense attorney in these proceedings.

4. Judge Rogers denied her motion for an extension of time and dismissed the claims against the individual defendants because she was Jewish.

5. Judge Rogers refused to grant her a protective order to delay her deposition.

6. Judge Rogers was a director of the alumni association of the University of Kansas when she filed her complaint with the Equal Employment Opportunity Commission (EEOC).

7. Judge Rogers was aware that there was an appearance of bias because he inquired of Myra Hinman, in a separate proceeding against the University of Kansas, whether she felt he would be biased because of his close association with the University of Kansas Alumni Association.

8. Judge Rogers was the president of the Board of Governors of the law school of the University of Kansas during the pendency of this action.

9. Judge Rogers permitted her attorney to withdraw on improper grounds.

10. Judge Rogers refused to strike alleged "defamatory remarks" from her attorney's notice of withdrawal.

The denial of a motion to recuse is reviewed for abuse of discretion. *Weatherhead v. Globe International, Inc.*, 832 F.2d 1226, 1227 (10th Cir.1987). The district court did not abuse its discretion because the recusal motions (1) failed to allege sufficient facts, (2) involved adverse rulings, or (3) were untimely.

### A. *Adequacy of Factual Allegations*

On October 11, 1983, Dorothy Willner filed a motion to recuse Judge Rogers pursuant to 28 U.S.C. §§ 455(a) and 455(b)(1) (1982). She alleged, inter alia, that:

> Plaintiff pro se Dorothy Willner observed Judge Rogers' demeanor towards plaintiff pro se Ann Ruth Willner on June 8, 1983 when plaintiff pro se Ann Ruth Willner appeared before the Court. Having formed the distinct impression of personal prejudice of the Court toward plaintiff pro se Ann Ruth Willner, plaintiff pro se Dorothy Willner asks the Court to consider most carefully whether it has exhibited the full consideration due their own behalf.

This allegation was unsupported by an affidavit or declaration.

Section 455(a) requires that "[a]ny justice, judge, or magistrate of the United

States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Section 455(b)(1) provides that a judge must disqualify himself when "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."

■ An unsubstantiated suggestion of personal bias or prejudice is insufficient to mandate recusal under section 455(a). *United States v. Hines*, 696 F.2d 722, 729 (10th Cir.1982). The motion fails to state any facts concerning Judge Rogers' demeanor that would "cause a reasonable man to doubt the judge's impartiality." *Id.* Under such circumstances recusal is not mandated under section 455(a). *Id.*

The October 11, 1983 motion is also insufficient to meet the requirements of section 455(b)(1). No facts were alleged that demonstrate actual bias against Dorothy Willner.

In the same motion, Dorothy Willner also alleges:

> Plaintiff has been informed that Judge Rogers was heard to make the following statement in reference to cases of sex discrimination being filed by female employees of defendant University of Kansas: "Those women over there! If they don't get the high-paying jobs they want, they holler discrimination."

This allegation is also unaccompanied by a supporting affidavit or declaration stating the source of the hearsay statement or when and where it was made. In *Hines*, this court concluded that a recusal motion that "fail[ed] to state with reasonable particularity when, where, and to whom the statement was made" did not meet the requirements of a section 455 motion. *Id.* at 729. Dorothy Willner has failed to allege facts showing actual bias. A reasonable person would not doubt a judge's impartiality on the basis of a hearsay statement from an undisclosed informer of unknown reliability. *Id.*

■ In a motion filed on February 7, 1986, Dorothy Willner alleged that an attorney who had appeared for the individual defendants in this action, prior to his withdrawal, was related to Judge Rogers. No evidence was offered by Dorothy Willner to support this allegation. Judge Rogers denied that he was related to any attorney who had appeared in the case. In *Hinman v. Rogers*, 831 F.2d 937, 939–40 (10th Cir. 1987) this court stated that a judge had a duty *not* to recuse himself on unsupported speculation.

**B.  *Attempted Recusal Based on Adverse Rulings***

Some of Dorothy Willner's challenges to Judge Rogers' rulings denying her motions for recusal are based on adverse rulings of the court. On January 7, 1985, she filed a motion for recusal under 28 U.S.C. § 144 (1982). This motion was supported by an affidavit. The affidavit alleges that Judge Rogers denied her motion for reconsideration of his order granting her ten additional days to comply with a discovery order because he is personally biased against her because she is Jewish. The affidavit further states that on September 19, 1984, Judge Rogers ordered her to submit answers to five interrogatories within ten days, notwithstanding the fact that she had notified the court on September 12, 1984 that the Jewish High Holy Days of Rosh Hashanah and Yom Kippur and the Sabbath in between "were approaching." On September 21, 1984, after the court had previously granted her up to ten days to comply with the discovery order, Dorothy Willner informed the court that this religious celebration would commence on September 26, 1984.

The affidavit contained no facts that would support· an inference that Judge Rogers was personally biased against Dorothy Willner because she is Jewish or for any other reason in ordering compliance with the discovery order.

Dorothy Willner was served with interrogatories on February 17, 1983. She was required to respond or object within 30 days. Fed.R.Civ.P. 33(a). She did not respond until June 30, 1983.

On August 18, 1983, the defendants moved to compel more complete and direct

answers. Dorothy Willner opposed the motion on the ground that she had supplied sufficiently detailed answers. On March 5, 1984, a magistrate ordered her to supplement her answers before March 30, 1984. She failed to comply with this order.

On August 10, 1984, the individual defendants who had requested the answers to the interrogatories moved for dismissal of Willner's claims against them pursuant to Fed.R.Civ.P. 37(b)(2)(C). Rule 37(b)(2)(C) permits the court to dismiss an action when a plaintiff fails to comply with a discovery order.

On September 12, 1984, Willner claimed that certain circumstances, not of her own doing, led to her failure to supply the supplemental answers. In addition, Willner argued that she had already given complete answers to her questions in her deposition. She also informed the court, as set forth above, that the religious holidays would occur later that month. The district court held a hearing on the motion to dismiss on September 18, 1984.

■ Instead of granting the motion to dismiss, Judge Rogers *sua sponte* ordered her to provide supplemental answers within ten days. The court also advised her that failure to comply would result in dismissal. These facts demonstrate that the district court exercised considerable and commendable patience in the face of Dorothy Willner's failure to comply with the March 5, 1984 order to supplement her answers. In challenging the propriety of the order compelling further answers, Dorothy Willner argues that the information sought by the defendants is contained within her deposition. Assuming that this representation is accurate, Dorothy Willner had ample time to comply with the court's order prior to the commencement of her religious observances. Indeed, she expended her energies during the ten-day period filing a further motion to delay compliance with the court's order.

The allegation that Judge Rogers is personally biased against Dorothy Willner is unsupported by any facts. The court order granting her additional time to comply with discovery was well within the court's discretion. Moreover, a motion to recuse cannot be based solely on adverse rulings. *See Hamm v. Members of the Board of Regents*, 708 F.2d 647, 651 (11th Cir.1983) (motion to recuse pursuant to sections 455 and 144); *United States v. Bray*, 546 F.2d 851, 857 (10th Cir.1976) (motion to recuse pursuant to section 144). Under the circumstances shown by this record, the district court did not abuse its discretion in denying the motion for recusal pursuant to section 144.

### C. *Untimeliness*

■ On several occasions, Dorothy Willner requested that Judge Rogers recuse himself on the ground that his participation in the University of Kansas alumni activities demonstrated actual bias or would cause a reasonable person to question his impartiality.

Dorothy Willner has failed to present any facts that would support an inference that Judge Rogers was actually biased against her as the result of his leadership position in the University of Kansas' alumni affairs. The law of this circuit does not require recusal on the basis of mere speculation that such activities would cause him to harbor prejudice against her. *Hinman*, 831 F.2d at 939–40.

A motion to recuse under section 455(a) must be timely filed. *See Singer v. Wadman*, 745 F.2d 606, 608 (10th Cir.1984) (motion to recuse under both 28 U.S.C. §§ 144 and 455(a) was untimely) *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1396, 84 L.Ed.2d 785 (1985); *see also Oglala Sioux Tribe v. Homestake Mining Co.*, 722 F.2d 1407, 1414 (8th Cir.1983) (section 455(a) has a timeliness requirement); *United States v. Slay*, 714 F.2d 1093, 1094 (11th Cir.1983) (same), *cert. denied*, 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984); *Chitimacha Tribe v. Harry L. Laws Co.*, 690 F.2d 1157, 1164 n. 3 (5th Cir.1982) (same), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed. 2d 83 (1983); *In re International Business Machines Corp.*, 618 F.2d 923, 932 (2d Cir. 1980) (same).

In the instant matter, the complaint was filed on December 1, 1982. The first motion to recuse based on Judge Rogers'

alumni activities was not filed until October 11, 1983. Discovery would have been completed by this time except for Dorothy Willner's recalcitrance in ignoring the defendants' requests for more complete answers to their interrogatories. Granting a motion to recuse many months after an action has been filed wastes judicial resources and encourages manipulation of the judicial process. *See International Business Machines Corp.*, 618 F.2d at 933 (imposition of a timeliness requirement in considering recusal motions is necessary to prevent waste of judicial resources). The motion to recuse based on Judge Rogers' alumni activities was untimely.

Dorothy Willner's contention that Judge Rogers asked Myra Hinman whether she felt he would be biased because of his participation in alumni activities must also fail because of untimeliness. We note that in *Hinman,* another panel of this court concluded that the allegations in Myra Hinman's recusal requests did not support a motion for recusal under section 144 or section 455. 831 F.2d at 939–40.

Equally untimely is Dorothy Willner's February 7, 1986 motion to recuse Judge Rogers because he was President of the Board of Governors of the University of Kansas Law School. This information was known to Dorothy Willner for at least one year prior to the filing of this motion. She relied upon the same facts in her petition for a writ of mandamus filed in this court on February 11, 1985.

In the February 7, 1986 recusal motion, Dorothy Willner also alleged that the district judge should recuse himself for permitting an attorney to withdraw on "spurious grounds" and for refusing to strike his alleged defamatory remarks from his withdrawal petitions. These adverse orders were rendered approximately three years prior to the recusal motion. These grounds for recusal are clearly untimely.

## III

## VALIDITY OF THE ORDER COMPELLING FURTHER DISCOVERY

Dorothy Willner argues that the district court committed reversible error in ordering her to provide more complete answers to the defendants' interrogatories. We disagree.

A district court's ruling on a motion to compel discovery is reviewed for abuse of discretion. *Naugle v. O'Connell,* 833 F.2d 1391, 1397 (10th Cir.1987).

■ Willner argues that the district court abused its discretion because it violated the spirit of the 1983 amendment to Fed.R.Civ.P. 26 which encourages judicial control over excessive use of discovery. She contends that the answers to defendants' interrogatories are contained within her deposition and, thus, compelling her to answer the interrogatories is an excessive use of discovery. Dorothy Willner's deposition contained over 1500 pages. Counsel for the defendants persuaded the district court that it would be unfair to compel their law clerks to search through this voluminous transcript to find the answer to five questions. Furthermore, she was served with the interrogatories and the motion to compel further answers before her deposition was taken in July 1984. Under these circumstances, the district court did not abuse its discretion in ordering her to supplement her answers to five interrogatories.

■ Dorothy Willner also complains that the district court abused its discretion in denying her September 24, 1986 motion for ten-day extension to supplement her answers. The district court acted well within its discretion. The defendants moved to compel more complete answers on August 18, 1983. Dorothy Willner was first ordered to supplement her answers on March 5, 1984. She failed to comply with this order. She did not offer any explanation for her defiance of the court's order until the defendants moved to dismiss the action on August 10, 1984. Thus, Dorothy Willner had notice for more than one year prior to September 19, 1984 that the defendants were seeking a further response to their interrogatories. She also defied a court order to supplement her answers without

explanation for over six additional months. Under these circumstances, the district court did not abuse its discretion in refusing to permit her to delay further the prosecution of this action.

## IV

### VALIDITY OF THE SANCTION OF DISMISSAL

■ The district court dismissed the action against the individual defendants because of Dorothy Willner's failure to comply with the discovery order of the court. As discussed above, on September 19, 1984, when the district court allowed Dorothy Willner up to ten days to comply with the March 5, 1984 order compelling further answers to the interrogatories, she was warned that "[f]ailure to comply with this order will result in the dismissal of the actions against the individual defendants." She failed to comply. On October 15, 1984, the district court dismissed the claims against the individual defendants. The court found that she had over six months to submit supplemental answers as ordered on March 5, 1984 but willfully failed to do so in the face of the court's warning that dismissal would occur if she did not comply within ten days of September 19, 1984.

If a party fails to provide discovery, the court may dismiss the action. Fed.R.Civ.P. 37(b)(2)(C). This court reviews an order of dismissal for failure to provide discovery for abuse of discretion. *Mertsching v. United States,* 704 F.2d 505, 506 (10th Cir.), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983).

We have reviewed the record. It demonstrates willful disregard of the court's orders. The district court's finding that Dorothy Willner's actions constitute "a willful failure to cooperate in the discovery process" was not clearly erroneous.

Dorothy Willner asserts that the refusal to grant her additional time to answer the interrogatories because of the Jewish High Holy Days violated her rights under the First Amendment. The district court's September 19, 1984 order did not violate her constitutional rights. She was given up to ten days to comply with the court's order. She was free to budget her time to complete her responsibility to the court in less than the maximum allotted time and before September 26, 1984, the first day of her religious observance.

## V

### SUFFICIENCY OF THE EVIDENCE

Willner contends that the district court's findings of fact are not supported by the evidence presented at trial.

A district court's findings of facts may be overturned on appeal only if they are clearly erroneous. Fed.R.Civ.P. 52(a); *Anderson v. City of Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *Carino v. Univ. of Oklahoma Bd. of Regents,* 750 F.2d 815, 820 (10th Cir.1984). A finding is clearly erroneous only if " 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Anderson,* 470 U.S. at 573, 105 S.Ct. at 1511 (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)). This court cannot reverse a district court simply because we might have decided the case differently. *Id.* "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* 470 U.S. at 573–74, 105 S.Ct. at 1511. The Supreme Court has urged deference to the district court's findings whether those findings are based on credibility determinations, documentary evidence, or both. *Id.* at 574–75, 105 S.Ct. at 1512.

■ Willner contends that the district court relied heavily on a letter, dated March 5, 1972, to the Dean of the College at the University of Kansas from Robert Squier, Chairman of the Anthropology Department, addressing Willner's early claims of discrimination and retaliation. Willner argues, however, that it was clearly erroneous for the court to rely on the explana-

tions and information in the letter because it provided false and misleading information in the form of a table with salary information for the anthropology department. Willner claims that the table inaccurately represents the percentage increase in salaries among the anthropology professors. In support of her argument, Willner compared the salary information in the table with that provided by the defendants at trial that contained the official budget data of the University of Kansas, including professors' salaries.

Willner's comparison is flawed. The table attached to Squier's letter listed the percentage increases in salary that the anthropology department *recommended* for each of its professors. The information contained in the official budget data was the *actual* percentage salary increases. The anthropology department's function was to recommend a salary increase to the University of Kansas. The University of Kansas administration made the final decisions. Thus, Willner's claim that Squier's letter contained false and misleading information is incorrect.

■ Willner also argues that there was no merit system at the University of Kansas. The district court's finding that there was a valid merit system is supported by the testimony produced at trial. Documentary evidence was presented, including evaluation forms used by the faculty committee, faculty handouts explaining the merit system, and minutes from faculty meetings where the system was discussed.

■ Third, Willner contends that the evidence shows that she was discriminated against because she did not receive equal pay, although she performed comparable work. The district court's findings that she did not receive equal pay because she was not contributing to the department and was not cooperating with the evaluation process were amply supported by testimony and documentary evidence. This proof included letters written by Willner in which she refused to submit necessary information to the anthropology department's salary committee.

■ The district court found that salary increases in the anthropology department were determined by evaluation on the basis of merit. This finding is amply supported by the testimony of former and present chairpersons. Originally, the department chairperson was responsible for evaluating the faculty and recommending their salary increases to the Dean of the College of Liberal Arts and Sciences, but beginning in 1977, that job was delegated to a committee made up of three members of the department. The faculty selected the members and voted on the procedures by which the committee would arrive at its recommendations. The record shows that, before the change in evaluation procedure, faculty members were judged on the basis of quality of their instruction, their research, and service, not on the basis of rank or seniority.

■ The district court also made extensive findings as to the scores and the salary increases that Professor Willner received from the chairperson or the committee in various years. These findings were supported by the testimony at trial, and court exhibits. The court found that Professors White, Johnson and Schott testified that Professor Willner failed to submit the materials needed for proper evaluation, or submitted them late and to the wrong person, and that during several years she received no increase because of her failure to cooperate. This evidence supports the court's determination that Professor Willner's salary increases were dictated by the fair application of the merit evaluation system and were not the result of sex discrimination.

■ The district court also found that the University of Kansas and its employees did not retaliate against Professor Willner because she filed charges with the EEOC and the district court. The court found that Professor Willner's interpersonal problems in the department were a result of her abusive and arrogant manner. The district court also heard testimony regarding Willner's unwillingness to sit on committees, or to submit her course schedules on time. Other witnesses testified concerning her

abusive behavior and threats she made to her colleagues. This testimony revealed and the district court concluded that, if anything, Willner received favorable treatment from the University of Kansas over the years in an effort to placate her.

The thoroughness of the district court's findings and extensive discussion of the evidence demonstrates that the court carefully considered the entire record. Each of the court's findings is supported by evidence in the record. After reviewing the evidence, we are *not* left with a "definite and firm conviction that a mistake has been committed." *Id.* at 573, 105 S.Ct. at 1511. Accordingly, the judgment is AFFIRMED.