Dorothy M. DAVID

v.

CITY AND COUNTY OF DENVER, et al.

No. 90–S–62.

United States District Court,
D. Colorado.

Nov. 24, 1993.

Barry Roseman, Sherman & Howard, George Price, Denver, CO, for plaintiff.

J. Wallace Wortham, Asst. City Atty., Denver, CO, for defendant.

## ORDER

SPARR, District Judge.

THIS MATTER comes on for hearing on Plaintiff's Motion for Disqualification of Trial Judge filed November 22, 1993 at 10:58 a.m., with a response by Defendants filed the same date filed at 5:03 p.m., and an amended response filed November 23, 1993, at 10:28 a.m.

This matter came on for hearing at 4:00 p.m., November 23, 1993, the Court having given counsel an opportunity to elaborate as they deemed necessary on their respective positions, having now heard comments of counsel, makes the following order.

## BACKGROUND

Plaintiff's motion for disqualification arises out of comments made at the final status conference held in this case on Friday, November 12, 1993, trial being now set to commence on Monday, November 29, 1993 at 9:00 a.m. At the status conference in question, counsel for the Defendants tendered their final witness list together with other trial documents. The witness list contained the names of Denver Police Chief David Michaud, Denver Police Sergeant Armedia Gordon, Manual Martinez, and Denver Police Captain Tina Rowe.

■ Under § 455(a), a Judge is under a continuing duty to ask himself what a reasonable person knowing all the relevant facts would think about his impartiality. *U.S. v. Hines,* 696 F.2d 722 at 728 (10th Cir.1982) (quoting *U.S. v. Ritter,* 540 F.2d 459, 462

(10th Cir.), *cert. denied,* 429 U.S. 951, 97 S.Ct. 370, 50 L.Ed.2d 319 (1976)).

In accordance with this continuing duty of disclosure, the Court's acquaintance with the afore-referenced individuals was disclosed at the status conference.

This Court's acquaintance with the named individuals is as follows.

1. The undersigned represented Chief Michaud in the case of *Schindelar v. Welch,* tried in United States District Court for the District of Colorado before the Honorable William Doyle, then judge of this Court, over 20 years ago. At that time, the undersigned represented then Deputy Sheriff Michaud individually in a case involving allegations under 42 U.S.C. § 1983, pursuant to a policy of insurance affording indemnity to then Deputy Sheriff Michaud as a member of the Sheriff's Department of Weld County, Colorado. The undersigned has never represented Chief David Michaud as his personal attorney. Following this case, the undersigned has had brief casual conversations with Chief Michaud on probably four or five occasions prior to December of 1992, at which time Chief Michaud in his official capacity as Chief of the Denver Police Department headed the investigation of the killing of the undersigned's son, Douglas Sparr. During that investigation, the Court recalls two or three conversations with Chief Michaud relative to the investigation.

2. The Court's contact with Sergeant Armedia Gordon was also during the investigation of the above-referenced homicide. Sergeant Gordon interrogated the undersigned for approximately 30 minutes on the first evening of the investigation. There was no further contact with Sergeant Gordon during the ongoing investigation other than being made aware of her participation therein.

3. The Court is acquainted with Manual Martinez. This acquaintance was originally based on Mr. Martinez' appearance before this Court when the undersigned was a District Judge for the Second Judicial District of Colorado and Mr. Martinez was assigned to the office of the Public Defender in that district. Subsequently, Mr. Martinez was appointed Manager of Safety and the undersigned had several passing conversations with him in the course of hearing cases involving the City and County of Denver and in the halls of the City and County Building.

4. The Court does not recall ever meeting Captain Tina Rowe. The Court's acquaintance with Captain Rowe is purely professional based on a knowledge of her qualifications as a police officer, which knowledge was obtained in discussions totally unrelated to this case or any other pending case.

The Court has had no personal or social contact with any of the above individuals at any time other than personal letters addressed to Chief Michaud on the occasion of his appointment as Chief of Police and in thanks for the work of his department after the conclusion of the homicide investigation afore-referenced.

## DISCUSSION

This matter is brought before the Court on an allegation by Plaintiff that this Judge should disqualify himself from hearing the case as his impartiality might reasonably be questioned pursuant to 28 U.S.C. § 455(a). No allegations are made pursuant to 28 U.S.C. § 455(b) or 28 U.S.C. § 144.

■ Section 455(a) of Title 28 provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The provisions of 28 U.S.C. § 455(a) do not command automatic disqualification of a judge, to the contrary, it is the duty of the judge who is allegedly biased to pass on the sufficiency of the allegations. *Hall v. Burkett,* 391 F.Supp. 237 (W.D.Okla.1975). A judge has an affirmative duty not to disqualify himself unnecessarily. The test is whether a reasonable person knowing all the relevant facts would harbor doubts about the judge's impartiality. *Glass v. Pfeffer,* 849 F.2d 1261, 1268 (10th Cir.1988). While § 455(a) is extremely broad, it must not be so construed that it becomes in effect presumptive so that the recusal is mandated upon a mere, unsubstantiated suggestion of personal bias or prejudice. *U.S. v. Hines,* 696 F.2d 722, 729 (10th Cir.1982).

**1096**

The Court recognized the importance of the avoidance of any appearance of impropriety in developing and maintaining the public's confidence in the judiciary. Such an appearance in a case, even in the absence of an actual showing of the same, is as damaging as the actual impropriety or prejudice.

Courts have adopted a test to determine whether there is an appearance of impropriety. Besides creating an objective standard, the adoption of this test is also intended to assist Courts in resolving conflicting duties imposed upon judges for disqualification in appropriate cases versus "the duty to sit" in a proper case, *State of Idaho v. Freeman*, 507 F.Supp. 706 (D.Id.1981).

In determining whether a judge must disqualify himself or herself from a case on the grounds that impartiality might reasonably be questioned, the Judge should take into consideration all of the circumstances both in the public view and those hidden and determine if a reasonable, uninvolved observer would consider that the judge's impartiality might reasonably be questioned. Where it appears, as here, that a judge has a wide range of discretion in rulings, grounds for disqualification should be strongly considered. *State of Idaho v. Freeman*, 507 F.Supp. 706.

This standard adopted by federal courts is sufficiently broad to require recusal both in those circumstances where partiality is in fact present and where only the appearance of partiality is present. *Smith v. Pepsico*, 434 F.Supp. 524, 525 (1977).

Under our system of justice, litigants come to the Courts expecting neutral resolution of their controversies by an impartial jurist and they are entitled to nothing less. Any appearance of impartiality which would give rise to a reasonable question as to that neutrality should be examined scrupulously by the trial judge. To do otherwise would bring into question the integrity of the our entire judicial system. It is imperative that this system exemplify a search for truth and justice and this can only be achieved through total fairness and impartiality.

In judging whether an appearance of impropriety exists, the Court has a duty to determine every semblance of reasonable doubt or suspicion that a hearing by a fair and impartial tribunal would be denied. Whether a judge should disqualify himself or herself based on actual prejudice or the appearance of prejudice or impropriety is a matter vested solely in the conscience of the trial judge considering not whether there exists factual impartiality but rather a reasonable person might question the Court's impartiality under all the circumstances. *U.S. v. Gigax*, 605 F.2d 507, 511 (10th Cir. 1979). It is proper, notwithstanding the lack of procedural guidelines, for the Court to pass upon this matter under the circumstances here present. *See* 13 A. Wright, Miller, and Cooper, *Federal Practice and Procedure 2d*, § 3550, at 625–629 (1984).

This Court has given careful consideration of all of the allegations made, especially the general allegation that it would be difficult if not impossible for this Court to remain impartial in a case involving the Denver Police Department. Upon careful reflection, the Court concludes that its impartiality cannot be reasonably questioned considering the totality of the circumstances afore-referenced.

### ORDER

For the reasons stated, Plaintiff's Motion for Disqualification of Trial Judge is **DENIED.**