**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 21 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

TERRY D. THOMPSON,

    Plaintiff-Appellant,

v.

DOLORES RAMSEY, D.O.C.,
Designee, Director; GARY GIBSON,
D.O.C. O.S.P. Warden; JIMMY
MARTIN, D.O.C. O.S.P. Unit
Manager; RON WARD, D.O.C. O.S.P.
Warden; ROBERT BERRY, D.O.C.
O.S.P. Case Manager,

    Defendants-Appellees.

No. 00-7018
(D.C. No. 98-CV-336-S)
(E.D. Okla.)

**ORDER AND JUDGMENT** *

Before **EBEL** , **PORFILIO** , and **LUCERO** , Circuit Judges.

    After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff Terry D. Thompson appeals the district court's dismissal of his civil rights complaint, brought pursuant to 42 U.S.C. § 1983, as frivolous. Because plaintiff's Eighth Amendment claim was supported by specific factual allegations and evidence raising genuine issues of fact, we affirm in part and reverse in part, and remand the case for further proceedings.

Plaintiff is incarcerated at the Oklahoma State Penitentiary in McAlester, Oklahoma, serving a 2,000-year sentence after conviction of eight counts of sexually assaulting his minor children. Because of the nature of his crime, plaintiff alleges that he is in constant danger if he is required to share a prison cell, and he seeks to be removed from the general population and assigned to a single cell.

Plaintiff alleges that since August 1997, he has been requesting prison officials to place him in protective custody. The evidence shows the following:

(1) On August 25, 1997, plaintiff filed a grievance alleging that on August 1, 1997, he had requested placement in protective custody from prison official Watson, who informed him that protective custody was full and that he should have thought about the consequences before he did his crime, but that Watson eventually helped him with a cell change; that on August 6, he was again required

to share a cell with a general population prisoner and that his request for protective custody to prison official Anderson was ignored; and that prison official Mullin also ignored plaintiff's August 18, 1997 Request to Staff seeking protective custody. Plaintiff identified his conviction for a sexual offense as the reason that he needed protection, but he did not identify any specific threats to his safety.

(2) On August 28, 1997, plaintiff refused an order to pack his belongings and move to a general population unit which he felt was dangerous. Plaintiff informed the guard that he would take a write-up because he was trying to get into protective custody. During the investigation of this charge, plaintiff informed investigator Hall that his life had been threatened.

(3) On September 2, 1997, plaintiff's grievance, requesting protective custody, was forwarded to Unit Manager Mullin, and on September 8, 1997, plaintiff repeated his request for protective custody. Plaintiff alleges in his sworn complaint that he informed defendant Berry on September 9, 1997, that his cellmate was threatening him based on his sex offense. His request for protective custody was denied by both the Unit Classification Committee and reviewing authority John East, because plaintiff had not pointed to a specific threat or filed separatees against any named inmates.

(4) On October 2, 1997, plaintiff filed a grievance requesting that prison officials reconsider their decision to deny him protective custody, attaching previous grievances and an "Emergency Complaint" to an attorney expressing his concerns over his safety. This grievance was returned unanswered because he attached too many pages and failed to attach a request to staff.

(5) On December 1, 1997, plaintiff filed a grievance in which he alleged that he had notified Warden Ron Ward on October 24, 1997, that his cellmate was making a "shank"; that after this complaint was ignored, plaintiff's cellmate cut him on the neck and raped him repeatedly; that on November 15, 1997, plaintiff refused to "lockdown" until his complaints were resolved; that on November 17 he was verbally abused by guards Suter, Brown, and Chumly, and that Suter told him that if he "did not go to the C-Unit, [Suter] would place [plaintiff] on D/U [disciplinary unit], in a cell with someone that would certainly hurt [plaintiff]." R. I, Doc. 21 at Ex. F7. Plaintiff was sent to the disciplinary unit on November 17, and his grievance alleged that on November 21, Suter and other officers provoked another inmate and then locked him in a cell with plaintiff. Plaintiff concluded that despite his many requests for protective custody, he had been raped, assaulted, harassed, and threatened. The Warden's response stated that an investigation revealed that plaintiff's allegations were unfounded and that he was attempting to manipulate the staff.

-4-

(6)  On December 10, 1997, plaintiff was transferred back to the general population.  On December 16, 1997, plaintiff alleges that he was threatened by his cellmate, and that he therefore agreed to return to the disciplinary unit.  Defendants allege that plaintiff was transferred to the disciplinary unit on December 16 because he refused to lockdown.

(7)  In mid-January 1998, plaintiff was required to share a cell with inmate Coward.  According to plaintiff, his cellmate was mentally unstable and was not receiving proper medication.  Plaintiff filed grievances on Coward's behalf with a prison doctor and defendants Berry and Martin, requesting that Coward receive the care he needed and noting Coward's violent nature.  On February 2, Coward allegedly strangled plaintiff to the point that plaintiff had a "near death" experience.  Plaintiff did not report the incident until February 10, at which time he was transferred to a different cell.

(8)  On February 17, 1998, plaintiff filed another grievance requesting that he be placed in protective custody or administrative segregation.  He alleged that his former cellmate had strangled him because other inmates told him to do so based on plaintiff's sex offense, and that defendant Berry and another guard had purposely antagonized Coward.  His request was denied first by defendant Martin, based on the unit's earlier decision and plaintiff's continued inability to give specific names, and later by defendants Gibson and Ramsey.

(9)  On March 10, 1998, plaintiff filed a grievance complaining about a prison guard making him share a cell with another inmate after his bad experience with inmate Coward.  Unit Manager Martin reiterated that plaintiff would have to share a cell and that he should make an effort to get along with his cellmate.

(10)  On April 6, 1998, plaintiff again refused an order to move to a general population unit, and he was returned to the disciplinary unit.  On April 13, 1998, plaintiff filed another grievance seeking protective custody or administrative segregation.  Defendant Martin again denied the request, stating that his decision would not be changed by additional grievances, and defendants Gibson and Ramsey again agreed, and warned plaintiff that he would be placed on grievance restriction if he continued to abuse the grievance process.

(11)  On May 11, 1998, plaintiff filed a grievance alleging that one of the prison guards was provoking the inmates and relating a problem over a tray of food.  Plaintiff asked to have a separatee filed against the guard, which was denied.  This decision was affirmed by the warden, and on June 30, 1998, plaintiff was placed on grievance restriction by defendant Ramsey.

(12)  At some point, plaintiff received two threatening notes from fellow inmates which he presented to the district court.  There is no evidence, however, that the notes were shown to prison authorities.

On July 8, 1998, plaintiff filed this civil rights action alleging violations of the Eighth Amendment proscription against cruel and unusual punishment, and the First Amendment guarantee of religious freedom. Plaintiff requested an injunction ordering prison officials to place him in a single cell in protective custody or administrative segregation, five million dollars in compensatory damages, and five million dollars in punitive damages. On September 18, 1998, plaintiff filed a supplemental complaint, in which he alleged that his Eighth Amendment rights were still being violated by forcing him to share a cell, that he had been exposed to tobacco smoke, and that he had been deprived of his legal materials. The district court ordered defendants to file a *Martinez* report. [1] After examining the parties' submissions, the district court dismissed plaintiff's claims as frivolous pursuant to 28 U.S.C. § 1915(e). Plaintiff appealed.

Before we consider the merits of plaintiff's appeal, we must examine whether we have jurisdiction over this case. Although the district court issued its order dismissing plaintiff's complaint on September 18, 1999, the court did not enter a separate judgment as required by Federal Rule of Civil Procedure 58. Further, because the September 1999 order contained detailed legal analysis, it could not operate as a final judgment that started the time to appeal. *Clough v. Rush*, 959 F.2d 182, 185 (10th Cir. 1992).

---

[1]    *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

On October 18, plaintiff filed a motion for reconsideration, which was denied by minute order on December 13, 1999. This minute order was sufficient to start the period within which to file an appeal. Because plaintiff's notice of appeal was filed on January 28, 2000, which was beyond the thirty-day period allowed for an appeal, we asked the parties to file briefs regarding our jurisdiction. Based on their responses, we conclude we have jurisdiction.

On December 18, 1999, plaintiff mailed a "Motion for Final Order to Recuse" to the district court, which was received on January 3, 2000. The motion identified the parties, the September 1999 dismissal of the complaint, and the December 1999 minute order, and stated that plaintiff intended to appeal these decisions as soon as the district court entered a final order in the case. This document then, was the equivalent of a notice of appeal under *Smith v. Barry*, 502 U.S. 244, 248-49 (1992), preserving our jurisdiction over this appeal.

Plaintiff argues that the district court erred in dismissing his Eighth Amendment claim as frivolous because he presented detailed evidence regarding specific events and people. The district court found that plaintiff's allegations were conclusory and failed to state a claim under the Eighth Amendment. Although it is not clear whether the district court dismissed this claim pursuant to § 1915(e)(2) or pursuant to defendant's request under Fed. R. Civ. P. 12(b)(6), our review is the same. We review the ruling *de novo* to determine whether "it is

obvious that plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir.) (comparing § 1915(e)(2) standard with that of Rule 12(b)(6)), *cert. denied*, 2001 WL 884152 (U.S. Oct. 1, 2001) (No. 01-5423) (quotation omitted). We agree with plaintiff that his allegations are sufficiently specific, and assuming they are true, they suffice to state a claim under the Eighth Amendment. Our analysis does not end here, however.

After submitting the *Martinez* report, defendants filed a motion to dismiss, or in the alternative for summary judgment, based on the materials submitted with the report. Plaintiff responded with a motion for summary judgment, to which he attached evidentiary material in support. In dismissing the action, the district court relied heavily on the submitted material. Because the district court considered evidentiary materials outside the pleadings, the court should have treated the motion as one for summary judgment, as directed by Federal Rule of Civil Procedure 12(b), which states, "[i]f, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . ." *See Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

Ordinarily, the district court's failure to convert the motion and to give plaintiff notice and an opportunity to be heard would require reversal, unless the dismissal could be justified under Fed. R. Civ. P. 12(b)(6). *See Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). In this case, however, plaintiff had notice that defendants were seeking summary judgment, and availed himself of the opportunity to respond with his own motion and supporting materials. Therefore, exercising our plenary power, we will treat the district court's order as one granting summary judgment in favor of defendants. *See Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000).

We review the grant of summary judgment *de novo*. *McBride v. Deer*, 240 F.3d 1287, 1289 (10th Cir. 2001). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

An Eighth Amendment claim for failure to protect is comprised of two elements. First, an inmate "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, the inmate must establish that the prison official has a "sufficiently culpable state of mind," i.e., that he or she is deliberately

-10-

indifferent to the inmate's safety. *Id.* (quotation omitted). The prison official's state of mind is measured by a subjective, rather than an objective, standard. *Id.* at 837. That is, the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Viewing the evidence in plaintiff's favor, we conclude that he has raised genuine issues of material fact regarding defendants' responses to his requests for protection. The evidence raises the issue of whether defendants were aware of a substantial risk to plaintiff which they disregarded, in light of his convictions for child sexual assault, his specific complaints about particular cellmates, and the alleged comments made to plaintiff by prison staff. On this basis, summary judgment in favor of defendants on plaintiff's Eighth Amendment claim is not appropriate. For the same reasons, plaintiff's request for an injunction must be reexamined. Because the propriety of an injunction should be determined in the first instance by the district court, we deny his motion to this court for an injunction.

Plaintiff also argues that the district court erred in dismissing his First Amendment claim that the prison has infringed on his religion by requiring him to share a cell with inmates who desire homosexual contact with him. The district court dismissed plaintiff's claim on the ground that the Religious Freedom

Restoration Act, 42 U.S.C. § 2000bb (RFRA) has been declared unconstitutional. *See City of Boerne v. Flores*, 521 U.S. 507, 536 (1997). Although plaintiff is correct in arguing that his complaint also raised a direct First Amendment claim, the district court's error in not addressing this claim was harmless, as plaintiff has failed to state a claim under the First Amendment.

Plaintiff's allegations do not demonstrate a connection between the requirement that he share a cell and homosexual contact. In fact, his allegations of a single experience despite his numerous cellmates over the years undermines his claim. Further, plaintiff has not alleged facts which demonstrate that the double celling requirement is unreasonable. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-53 (1987) (setting out reasonableness standard for free exercise challenges by prisoners and applying factors).

Finally, plaintiff argues that his motion for the district court to recuse itself should have been granted. We review the denial of a motion to recuse only for an abuse of discretion. *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992). The only grounds upon which plaintiff relies to show bias are that the district court erroneously ruled against him and did not properly docket his recusal motion. Adverse rulings alone are insufficient to show bias. *See Willner v. Univ. of Kan.*, 848 F.2d 1023, 1028 (10th Cir. 1988). The district court did not abuse its discretion in denying plaintiff's recusal motion.

The judgment of the United States District Court for the Eastern District of Oklahoma is AFFIRMED in part, REVERSED in part, and remanded for further proceedings.

Entered for the Court


David M. Ebel
Circuit Judge